UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

KENNETH MARTIN MORRIS                                          PLAINTIFF

v.                                          CIVIL ACTION NO. 5:12CV-P156-R

CHRISTIAN COUNTY SHERIFFS DEPT. et al.                    DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, Kenneth Martin Morris, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the action will be dismissed in part and allowed to continue in part.

**MOTION TO AMEND THE COMPLAINT**

Before the Court screens the complaint, the Court **GRANTS** Plaintiff's notice regarding additional Defendants, which the Court interprets to be a motion to amend the complaint (DN 4). *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within: 21 days after serving it.").

**I. SUMMARY OF CLAIMS**

Plaintiff, who is no longer incarcerated, sues the Christian County Sheriff's Department; Deputy Sheriffs Tim Cooksie, Brandon Hawkins, and Phillip Meachum; Christian County Jail (CCJ) Jailer Brad Boyd; CCJ Deputies Steve Howard, Hargrove, and Powell; Chaplain Kirk Zander; CCJ nurses Carol Mann and Missy Lancaster; CCJ SAP[1] Program Director Phil Latham; CCJ SAP Program Leader Tony Willard; attorney Eric Beardon; the Kentucky Department of Corrections Commissioner LaDonna Thompson; Jennie Stuart Hospital; doctors Andrew Pacos,

---

[1] The Court understands this acronym to mean "Substance Abuse Program."

David Bealle, and Frederick Robbe; and Nurse Tammy Wadley.  His complaint states that all Defendants are sued in their individual and official capacities.  In his amended complaint, he adds as additional Defendants the following CCJ employees:  Captain Chris Collins, Deputy Carter, Sergeant Fuller, Deputy Reeves, Captain Byrd, and Captain Charles Bruce.

Plaintiff alleges that he was arrested on October 25, 2011, and was taken to the hospital due to facial injuries.  He further alleges that during his arrest, his leg was broken and that he "complained to sherriffs and doctor at Jennie Stuart hospital but no one would listen to my complaint of pain."  After his arrest, he was incarcerated at CCJ.

Plaintiff asserts that his leg was not x-rayed until November 10, 2011, at which time the x-ray revealed that his leg had been broken.  He states that during the 5-month period before he had surgery, "Jail nurses and Jailers would take my crutches.  Doctor David Bealle gave me an air boot to help me through until surgery was done but Jail staff by order from the jail nurses took the air boot that was supposed to help me."  He further alleges that he "was constantly threatened by jail staff and harrassed.  They put me in a situation my leg could not even heal on its own at all."  He states that after five months, he had surgery, but that after his surgery he was "put out of Christian County Jail and the Substance Abuse Program I was in and sent to Kentucky State Reformatory."  He asserts that, because of the five-month delay in surgery, he "limped around in jail which caused further damages in leg and messed up my right hip and I am still going to doctors and suffering and have to depend upon family because of their medical negligence."  He alleges that his Eighth and Fourteenth Amendment rights were violated.  He also alleges state-law tort claims.  Plaintiff asks for monetary and punitive damages.

Plaintiff attaches a number of exhibits to his complaint.  These exhibits consist of what

appear to be contemporaneous notes made before his surgery, witness statements from fellow inmates, and medical records. Plaintiff's notes detail that on January 24, 2012, his leg was in pain. At that time he was wearing a "small air boot." Plaintiff states, "I know the bone keeps popping back into alignment when relaxed. I want surgery now to have screwed and braced so healing can do its job. Option for surgery was discussed between doctor and I in the presence of 2 guards on different occasions." He states further, "Nurse Missy keeps playing games and I am the one suffering. Cpn. Zander made a complaint for me to higher up person about the boot and or else. Nurse got notified . . . She got upset and is taking her frustrations out on me for her incompetence."

According to Plaintiff's notes, the nurse was notified from the beginning that his leg was broken but she denied anyone telling her, stating that Plaintiff only told her two weeks into his incarceration. Plaintiff's notes state that only after the guards noticed him "waiting patiently in unbearable pain" was something done: "Nurse finally had x-ray machine brought over to have left lower leg x-rayed. After break or fracture was noticed they sent me back to cell. 'Things changed' Crutches, pain meds started coming through be[a]n flap." At that time an appointment with an orthopedic surgeon was made. The doctor took more x-rays and gave Plaintiff a leg boot with a plastic air pump bulb to adjust the air inside. However, "Nurse would not let [Plaintiff] take the only thing that makes the air boot any good and that is air. Without the air bubble pressure valve BOOT IS NO GOOD!" Plaintiff states that a guard did bring the air bubble to his cell two times that evening to adjust the boot, but after that nobody did again, apparently because it was lost.

Plaintiff further states that a week or two after getting the boot, a nurse took Plaintiff's

cellmate's crutches and told Plaintiff and his cellmate that they no longer needed them and declared that they were "'faking being hurt.'" After this, Defendant Hargrove and another officer took Plaintiff's crutch extenders, saying they were weapons, leaving Plaintiff with inoperable boots and crutches. After another visit to Dr. Bealle, Plaintiff had a smaller type of air boot, "which did not serve purpose and [Plaintiff] finally got another set of crutches upon entering SA program." He also alleges that on another occasion Defendant Hargrove went through Plaintiff's property and took the hose for the small air boot. Plaintiff states that he explained to Defendant Hargrove why he needed the hose and that he had permission from the nurse and the doctor. Because Plaintiff did not have written permission, Defendant Hargrove then took the hose saying he was "going to ok it with the nurse." Plaintiff states that he did not get the hose back for days. Plaintiff states that he kept complaining that his leg was hurting. His notes detail further difficulties in getting the tube to blow up his air boot.

On January 20, 2012, during a cleanup of the jail Plaintiff was shoved into a table impacting his lower left leg. He was allowed to see the nurse after that and another x-ray was set up. Apparently he was given crutches and, eventually, his small air boot. Plaintiff submitted several more medical leave slips complaining of leg pain. On January 29, 2012, he had chills and the left lower leg above the ankle was sore with a rash. He saw the nurse on January 31, and then the doctor. The doctor stated he had a "bad infection" and prescribed two kinds of antibiotics. The doctor sent him to the Jennie Stuart Imaging Center to check his left leg for clots and told him to leave the boot off for a while. A week later, his leg infection was better and the doctor (presumably an outside doctor) referred him to Vanderbilt for an operation on his leg. Back at the jail, Plaintiff was told he could not go out of state to have surgery but that the doctor

(presumably the jail doctor) would allow him to have in-state surgery. An operative report shows that Plaintiff's left leg was operated on by Dr. Bealle at the Jennie Stuart Ambulatory Surgery Campus on March 28, 2012.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff's complaint concerns medical treatment or lack thereof for his broken leg. He cites to both the Eighth and Fourteenth Amendments. It is unclear from the complaint whether Plaintiff was a pretrial detainee for the entire period he was allegedly without treatment for his broken leg. "Due process requires that a pretrial detainee not be punished. A sentenced inmate,

5

on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).

"Because the Cruel and Unusual Punishments Clause 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (footnote and citations omitted) (*abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). "However, state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (footnote and citations omitted).

Prison officials may not be deliberately indifferent to the medical needs of their prisoners or their pretrial detainees. *See Townsend v. City of Morehead, Ky.*, No. 99-5575, 2000 WL 282475, at *2 (6th Cir. Mar. 9, 2000). Prison officials violate the Eighth Amendment (which applies to convicted inmates) and the Fourteenth Amendment's Due Process Clause (which applies to pre-trial detainees) "when they are deliberately indifferent to a substantial risk of serious harm to an inmate, and a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 840-42 (1994); *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Plaintiff's claims against each Defendant will be considered below.

### *Claim against Defendants Sheriff's Department and Deputies*

If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of*

*State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against the three Sheriff's Deputies in their official capacities – Cooksie, Hawkins, and Meachum – are actually brought against the Christian County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Likewise, the claims against the Sheriff's Department are actually against Christian County. *Id.* (holding that because a police department is not an entity which may be sued, the County is the proper party to address allegations in the complaint).

When a § 1983 claim is made against a municipality, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889

(6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Plaintiff does not allege any constitutional wrongdoing by these Defendants as the result of a policy or custom. Therefore, the claims against the Sheriff's Department and the deputies in their official capacities will be dismissed.

With regard to the individual-capacity claims against Defendants Cooksie, Hawkins, and Meachum, Plaintiff identifies these Defendants as Christian County Deputy Sheriffs. He does not mention them again in the complaint or the attachments. However, he does allege that on October 25, 2012, he complained to "sheriffs" at the hospital of his leg being broken but that no one would listen. The Court will allow the constitutional and state-tort claims to continue against these Defendants in their individual capacity.

### *Claim against Defendant CCJ Jailer Boyd*

As explained above, Plaintiff's claims against the CCJ Jailer in his official capacity are actually brought against the Christian County government. *See Matthews*, 35 F.3d at 1049.

In the instant case, the complaint and attachments thereto read liberally identify a policy

or policies causing the alleged constitutional violations in the form of denying Plaintiff use of the crutches and the air boot and the delay in surgery. Therefore, upon review, the official-capacity claims for denial of medical treatment and state-law claims against Defendant Boyd will go forward. *See Garner*, 8 F.3d at 364.

However, Plaintiff does not allege any individual involvement by Defendant Boyd. In fact, the complaint does not mention this Defendant except to name him as a party. The specific facts must explain how the defendant is personally responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Plaintiff's complaint fails to do so. As such, the claim against Defendant Boyd in his individual-capacity must be dismissed for a failure to state a claim. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam) (stating that personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).

***Claim against Defendant Hargrove***

In an attachment to his complaint, Plaintiff alleges that Defendant Hargrove took his crutch extenders saying they were a weapon, after which Plaintiff states his crutches were no good to him. He also alleges that on another occasion Defendant Hargrove went through Plaintiff's property and took the hose for the small air boot. Plaintiff states that he explained to Defendant Hargrove why he needed the hose and that he had permission from the nurse and the doctor. According to Plaintiff, Defendant Hargrove replied that because Plaintiff did not have a "nurse's ok written on paper, [Plaintiff ] had no reason to have hose period." Plaintiff alleges that Defendant Hargrove then took the hose saying he was "going to ok it with the nurse" but Plaintiff did not get the hose back for days.

9

The Court will allow the individual and official-capacity constitutional and state tort claims against this Defendant to go forward.

*Claim against Defendant Howard*

Plaintiff states that at one point he explained his situation to this Defendant. He also states that Defendant Zander had made complaints to Defendant Howard "or higher up" regarding the problem in having the air boot. He also states that after he had asked a SAP instructor to ask Defendant Howard about the boot, Defendant Howard "refused after I explained how painful my leg [was]." He states that on January 27, 2012, his mother came into the jail and talked to Defendant Howard about Plaintiff's situation, letting "him know that medical is doing nothing to help me as she held a photo of my x-rays against the window between walls so everyone could see my problem at hand." He further alleges that Plaintiff explained to Defendant Howard when asked where his air boot was that Dr. Parker had told him not to wear it because it had caused his infection a couple of weeks before. He states that about a week later he was called to see the doctor and when he got there, Defendant Howard was there. Plaintiff relates that he told Defendant Howard he was already beginning to feel better on his own, which Defendant Howard interpreted as Plaintiff denying medical treatment.

On review, the constitutional and state-law official and individual-capacity claims against Defendant Howard will go forward.

*Claims against Defendants Nurses Lancaster and Mann*

On review, the constitutional and state-law official and individual-capacity claims will go forward against these Defendants.

10

*Claim against Defendant Reeves*

Plaintiff alleges that at one point Defendant Reeves gave Plaintiff some crutches and was told by the nurse to get Plaintiff's big boot from the property room; however, Defendant Reeves brought him the small air boot and refused to listen to Plaintiff's explanation as to why that was the wrong boot. The Court will allow the individual and official-capacity claims against this Defendant to go forward.

*Claim against Defendant Byrd*

Plaintiff alleges that on February 14, 2012, Defendant Byrd took him to the nurse's station where they "got into a squabbling match" over Plaintiff going to Nashville for surgery. Plaintiff states that he asked to see Defendant Byrd on February 16, 2012, to warn him of the danger of his boot causing an infection but that Defendant Byrd did not come. The next day, Defendant Byrd brought him his pain medication and Plaintiff was able to tell him about his prior infection. Defendant Byrd stated that he would warn the nurses "but no one ever came back to our cell to tell me one way or the other." Plaintiff states that, on another occasion, he asked Defendant Byrd to witness a "scenario with nurse about my problems" and that he had asked Defendant Byrd two times about having his surgery.

On review, the Court will allow the individual and official-capacity claims against this Defendant to go forward.

*Claims against Defendants Zander and Carter*

The complaint contains no allegations regarding wrongdoing by these Defendants. Attachments to the complaint state that Defendant Zander made a complaint on Plaintiff's behalf regarding the need for the air boot and that he took Plaintiff "across town to orthopedic

11

surgeon." The attachments also reveal that during Plaintiff's difficulties in keeping the air boot, Defendant Zander called him "to the law box to see if [Plaintiff was] still ok." Defendant Zander told Plaintiff that he had "made complaints to Howard or higher up as [Plaintiff] wasn't the only one having the same problem with air boot in jail[.]" Thus, Plaintiff does not allege that this Defendant harmed him in any way; if anything, it appears from the complaint that Defendant Zander attempted to be helpful to Plaintiff. The only mention of Defendant Carter is that he, like Defendant Zander, knew of discussions between the doctor and Plaintiff about surgery. Consequently, these Defendants will be dismissed from this action by separate Order.

### *Claims against Defendants Lathom and Willard*

Plaintiff identifies these Defendants as Jail SAP staff. The complaint and its attachments contain no allegations against these Defendants. It appears from his complaint that Plaintiff wished to stay in the SAP when he was sent to the Kentucky State Reformatory. He does not allege that these Defendants were in any way responsible for putting him out of the SAP. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The claims against these Defendants will be dismissed for failure to state a claim.

### *Claim against Defendants Powell and Fuller*

The only mention of these Defendants is in one of the attachments to the complaint wherein Plaintiff states that Defendants Powell and Fuller observed his leg, took a picture of it, and sent it to Nurse Missy by phone, who responded that she would see Plaintiff in the morning. Therefore, Plaintiff fails to allege any harmful conduct by Defendants Powell and Fuller and fails to state a claim against them. *See Twombly*, 550 U.S. at 570.

*Claims against Defendants Collins and Bruce*

Similarly, the claim against Defendants Collins and Bruce must be dismissed. The only mention Plaintiff makes of Defendant Collins is that Defendant Howard came and talked to Plaintiff one day after he had talked earlier with Defendant Collins. And, the only mention Plaintiff makes as to Defendant Bruce is that he was one of the people who told Plaintiff that his cellmate had been taking the rod adjusters out of Plaintiff's crutches. Thus, Plaintiff fails to allege any wrongdoing by these Defendants.

*Claim against Defendant KDOC Commissioner*

A state official, such as the KDOC Commissioner, sued in her official capacity for money damages, is not a "person" subject to suit under § 1983. *See Will*, 491 U.S. at 71; *Matthews*, 35 F.3d at 1049. Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Accordingly, the official-capacity claims for damages against Commissioner Thompson will be dismissed for failure to state a claim and for seeking monetary relief from a Defendant who is immune from such relief.

With regard to Plaintiff's individual-capacity claim against Defendant Thompson, the only allegation that Plaintiff makes is that at one point he was told that his surgery was waiting on approval from the KDOC. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v.*

13

*Atkins*, 487 U.S. 42, 48 (1988). "Respondeat superior[2] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, even if this Defendant was aware of the allegations in Plaintiff's complaint, mere awareness would not be enough to subject her to liability under § 1983 for the purported wrongdoing of her subordinates. The individual-capacity claim against her will be dismissed as well.

*Claims against Hospital Defendants*

Plaintiff sues the Jennie Stuart Hospital; Dr. Andrew Pacos of Appalachian Regional Healthcare; Tammy Wadley, a nurse at Jennie Stuart Hospital; and Drs. David Bealle and Frederick Robbe of Western Kentucky Orthopedics and Sports Medicine. Plaintiff alleges that on October 25, 2011, he complained that his leg was broken to a "doctor at Jennie Stewart

---

[2]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

14

Hospital" but nobody would listen.  Attached to his complaint is his admission form into the Jennie Stuart Medical Center on October 25, 2011.  That form identifies Defendant Pacos as the attending and admitting physician.  On initial review, the Court will allow the constitutional and state-law claims against Defendants Jennie Stuart Hospital and Pacos to go forward.

Defendants Wadley and Robbe are not mentioned at all in the complaint.  Therefore, the allegations against them will be dismissed for failure to state a claim.

Plaintiff's complaint and attachments do refer to Defendant Bealle but allege no wrongdoing.  It was Dr. Bealle who prescribed the boot, which appeared to help Plaintiff until he was no longer allowed to have all the pieces to make the boot functional.  It was also Defendant Bealle who performed the surgery on his leg.  Plaintiff does not allege that the surgery caused him problems; rather that it was the delay in having surgery which caused him problems. Plaintiff does not allege that it was Defendant Bealle who was responsible for the delay in surgery.  Absent allegations of wrongdoing, this Defendant will be dismissed for failure to state a claim.

*Claim against attorney*

Plaintiff alleges that, after his leg was broken, his attorney, Defendant Beardon, abandoned him.  Plaintiff does not state a claim against his attorney under § 1983, the statutory provision under which alleged constitutional violations must be brought.  *See Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) (holding that § 1983 provides the exclusive remedy for constitutional claims brought against state and local officials and local units of government), *vacated on other grounds*, 488 U.S. 1036 (1989).  It is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes

15

of § 1983. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."). Thus, Plaintiff fails to state a claim under § 1983 against his counsel, and this claim will be dismissed by separate Order.

### *Claims on behalf of his family*

As part of his requested relief, Plaintiff asks for "any and all other relief to which the Plaintiff I Kenneth Morris, mother Christine Morris, father Joseph Morris and family may be entitled." To the extent that Plaintiff is attempting to seek compensation on behalf of his family, he may not do so. As a *pro se* litigant, Plaintiff may act as his own counsel in this matter. *See* 28 U.S.C. § 1654. However, he is not authorized to represent others in federal court. *See*, *e.g.*, *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("*pro se*" means to appear for one's self; thus, one person may not appear on another person's behalf in the other's cause).

Moreover, Plaintiff may only assert those claims which are personal to him. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Coal Operators & Assoc., Inc. v. Babbitt*, 291 F.3d 912, 915-16 (6th Cir. 2002). Thus, to the extent that Plaintiff seeks to assert a claim on behalf of members of his family, he lacks standing to do so. *Babbitt*, 291 F.3d at 915 ("[S]tanding to sue . . . is a jurisdictional requirement."). Therefore, the claims brought on behalf of Plaintiff's family will be dismissed for failure to state a claim.

### *State-law claims*

For all of the Defendants who will be terminated as parties, the state-law claims against

them will be dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, the Court will by separate Order dismiss the claims brought on behalf of Plaintiff's family and all claims against the Christian County Sheriff's Department and Defendants Zander, Carter, Lathom, Willard, Powell, Collins, Fuller, Bruce, Thompson, Wadley, Robbe, Bealle, and Beardon. The Court will also dismiss the official-capacity claims against Defendants Cooksie, Hawkins, and Meachum and the individual-capacity claims against Defendant Boyd. A separate Scheduling Order will be entered to govern the development of the remaining claims.

Date:




cc:     Plaintiff, *pro se*
        Defendants
        Christian County Attorney
4413.009