UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00156-TBR

KENNETH MARTIN MORRIS                                                 Plaintiff

v.

CHRISTIAN COUNTY SHERIFF'S DEPARTMENT, *et al.*          Defendants

**MEMORANDUM OPINION**

This matter is before the Court upon the following Motions: (1) Defendants Deputy Tim Cooksey, Deputy Brandon Hawkins, Deputy Phillip Meacham, Jailer Brad Boyd, Deputy Caleb Hargrove, Captain Chris Burd, Deputy Steve Howard, Deputy Brian Rives, Nurse Carol Mann, and Nurse Missy Lancaster's (collectively, the "Christian County Defendants") Motion for Summary Judgment, (Docket No. 36); (2) Defendant Jennie Stuart Medical Center, Inc.'s (JSMC) Motion for Summary Judgment, (Docket No. 39); and (3) Defendant Andrew Pacos, M.D.'s Motion for Summary Judgment, (Docket No. 41). Plaintiff has not responded to any of these motions, and the time to do so now has long since passed. For the reasons that follow, the Court will DISMISS Plaintiff's Complaint and DENY each of these Motions as moot.

BACKGROUND

On October 25, 2011, Christian County Sheriffs Deputies Brandon Hawkins and Phillip Meacham responded to a call from 1000 Raintree Lane in Hopkinsville, Kentucky. According to their affidavits, the officers believed they were responding to a domestic dispute involving a firearm. (*See* Docket Nos. 36-5; -6.) When the officers

arrived at the residence, they spoke with Karon Hale, who told them she was Plaintiff Kenneth Martin Morris's girlfriend. The officers also spoke with Hale's son, Kevin Couch. Hale and Couch told the officers that Morris had held a gun to Hale's head and that Couch had engaged Morris in an attempt to wrest the gun away from him. Hale and Couch informed the officers that Morris had fled the residence upon the officers' arrival and that Morris was still armed with a gun. (Docket Nos. 36-5; -6.)

The officers located Morris hiding behind a trailer in the side yard of the residence. The officers state that they told Morris to show his hands no less than five times but that Morris refused. After Morris's refusals, Deputy Meacham deployed his taser. Thereafter, the officers continued to instruct Morris to put his hands in the air some eleven times before he eventually complied. Deputy Hawkins then arrested Morris and secured him in Deputy Meacham's cruiser. Deputy Tim Cooksey subsequently arrived on the scene, and all three officers observed that Morris appeared to be highly intoxicated and was bleeding from a wound to his head.

Deputy Meacham transported Morris to JSMC in Hopkinsville. Deputies Hawkins and Cooksey also went to JSMC. Dr. Andrew Pacos was the treating emergency room physician. Once at the hospital Morris refused to cooperate and cursed and yelled at the officers. When a nurse attempted to draw Morris's blood per Dr. Pacos's orders, Morris became increasingly combative. The officers instructed Morris to cooperate with the blood draw, and, after he continued to behave aggressively, Deputy Cooksey deployed his taser on Morris. The nurse was then able to draw Morris's blood. Deputies Meacham and Cooksey subsequently left the hospital to respond to another call, but Deputy Hawkins remained with Morris until he was

discharged.  According to Dr. Pacos's records, Morris did not indicate any leg pain or injury while at the hospital.

Morris was discharged from the JSMC the following morning and transported by Deputy Hawkins to the Christian County Jail (CCJ) were he was booked.  Nurse Missy Lancaster examined Morris that morning, noting that Morris's right eye was swollen shut and that he had sutured lacerations above the right eye and between his eyes.  Morris denied injury to other parts of his body, and Nurse Lancaster noted that Morris moved all his extremities without difficulty.  Nurse Lancaster placed Morris on medical watch and noted that an appointment would be made with an ear, nose, and throat doctor.  Nurse Lancaster also noted that Morris had been prescribed Amoxicillin and that he would be provided ice packs and ibuprofen for pain.

Prison medical records indicate that Morris was seen by "Dr. Calvert" two days later on October 28 and that Dr. Calvert had ordered eye drops.  Morris was again seen by Nurse Lancaster the next day, October 29, who noted that his facial swelling was "much improved" and that his sutures remained intact with no signs of infection. (Docket No. 37-3, at 2.)

The Christian County Defendants have submitted video recordings of four of Morris's appearances in Christian Circuit and District Courts, and the Court has reviewed this footage.  The first recording shows Morris's appearance in Christian Circuit Court on November 2, 2011.  At that time, Morris is seen to walk to the bench and stand unassisted for the duration of the plea colloquy, which lasted just under five minutes.  At that time, Morris told the presiding judge, "I got some sense knocked into

me." The second recording shows Morris's appearance in Christian District Court on November 4, 2011. Again, Morris is seen to walk to the podium with ease and stand unassisted.

However, Morris's jail medical record reflect that on that same day, November 4, he submitted a medical request form complaining of lower leg pain. (Docket No. 37-3, at 3.) Nurse Lancaster noted Morris's complaint and instructed him to notify CCJ staff if the pain worsened or did not improve. Nurse Lancaster also noted that Morris was to continue to receive ibuprofen for pain.

Morris submitted another medical request form on November 9, 2011, complaining that his leg pain persisted. (Docket No. 37-3, at 5.) An x-ray was performed the following day, which revealed a possible fracture of the fibula. Nurse Lancaster instructed CCJ staff to provide Morris crutches for ambulation and to place in isolation if needed. Nurse Lancaster's notes further reflect that a consultation with an orthopedic specialist would be arranged if the fracture was confirmed. A follow up to that note shows that the fracture was indeed confirmed and that an appointment was scheduled with an orthopedic specialist. (Docket No. 37-3, at 6.) Nurse Lancaster followed up with Morris the next day, November 11, informing him of the x-ray results and that an appointment has been scheduled with an orthopedic doctor for further evaluation.

On November 14, 2011, Morris was examined by Dr. David Bealle. Dr. Bealle's notes state: "I have recommended nonoperative treatment and [Morris] understands this. All of the patient's questions were answered in detail today. He will return to see

us back in ten days and x-rays will be obtained at that time. I have outlined to him that he needs to limit his weight bearing." (Docket No. 37-7, at 1.)

Morris again appeared in Christian District Court on November 21, 2011. The video recording reflects that Morris was walking with the assistance of crutches at that time.

Morris next saw Dr. Bealle on November 29, 2011, and again had x-rays taken of his leg. At that time, Dr. Bealle's notes state: "We are going to continue to watch the fracture and treat him conservatively. If this does not heal we recommend open reduction internal fixation with a plate and he understands. We will see him back in two to three weeks and x-rays will be obtained at that time." (Docket No. 37-7, at 2.)

Morris appeared in Christian Circuit Court on December 14, 2011, again walking with the assistance of crutches. When the judge asked why Morris was using crutches, Morris responded, "I got some sense knocked into me the night I messed up."

Morris was taken to see Dr. Bealle again on December 13, 2011. X-rays taken that day showed very little healing. Dr. Bealle explained the option of surgical repair to Morris but noted that Morris "wants to wait and see how it does." (Docket No. 37-7, at 3.) Dr. Bealle's notes indicate that Morris was to return for reevaluation in four to six weeks, at which time further x-rays would be taken and "[w]e will make a decision as to which direction to go." (Docket No. 37-7, at 3.) Dr. Bealle additionally noted that Morris would be provided an air splint.

Morris saw Dr. Bealle again on January 10, January 31, February 7, and February 14, 2012. (Docket No. 37-7, at 4-7.) On February 14, Dr. Bealle recorded

that Morris would require on operation on his leg. Dr. Bealle's notes from that examination further indicate that Morris had expressed a desire to have surgery performed at Vanderbilt University where Morris's previous surgeries had been performed. (Docket No. 37-7, at 7.) Nurse Lancaster spoke with Morris later that day and informed him that the Department of Corrections would have to approve any surgical procedure and would not approve out-of-state procedures. (Docket No. 37-3, at 15.) Nurse Lancaster also informed Morris that he could have the surgery performed here that it would be done as a same-day operation. Nurse Lancaster's notes reflect, however, that "Morris is set on having surgery done at Vanderbilt and state he doesn't understand why he can't go where ever he wants." (Docket No. 37-3, at 15.) After again explaining the applicable procedures to Morris, Nurse Lancaster's notes show that "Morris states he does not want surgery scheduled at this time [and] wants to 'see what happens with this other stuff first.'" (Docket No. 37-3, at 15.) Nurse Lancaster encouraged Morris to notify CCJ staff when he made his decision.

Two weeks later, on February 28, 2012, Morris submitted a medical request form requesting that an operation be scheduled. (Docket No. 37-3, at 17.) Dr. Bealle performed surgery to repair Morris's fracture on March 28, 2012. After his surgery was completed, Morris was transferred from CCJ to the Kentucky State Reformatory.

Morris filed his original Complaint in this matter on October 24, 2012. (Docket No. 1.) Because Morris is proceeding *pro se*, the Court conducted an initial screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3 601 (6th Cir. 1997). By Order of March 1, 2013, the Court dismissed a number of Morris's claims but allowed him to proceed on his Eighth and Fourteenth Amendment claims of

deliberate indifference brought under 42 U.S.C. § 1983, as well as his state-law claims of medical negligence or, alternatively, intentional infliction of emotional distress[1] against Deputies Cooksey, Hawkins, and Meachum, in their individual capacities; Jailer Brad Boyd, in his official capacity; Deputy Hargrove, Deputy Howard, Deputy Rives, Deputy Burd, Nurse Lancaster, and Nurse Mann, each in both their individual and official capacities; and finally, JSMC and Dr. Pacos. (*See* Docket No. 6.) Also on March 1, 2013, the Court entered a Scheduling Order setting forth the following deadlines:

> (5) The parties shall complete all pretrial discovery herein no later than **June 27, 2013**. . . .
> . . . .
> (7) No later than **July 27, 2013**, Plaintiff shall file a pretrial memorandum setting for in detail all facts upon which he bases his claim in this matter against each Defendant.
>
> (9) . . . All dispositive motions shall be filed no later than **August 26, 2013**.

(Docket No. 8, at 2-3.) That Scheduling Order also instructed:

> (10) If any party wishes additional time to complete any of the actions directed above, a motion requesting such an extension must be filed with the Court before any such deadline expires. Any such motion to extend any time should indicate the reasons for extension. The Court will not grant an extension unless good cause is shown.
> . . . .

---

[1] The Christian County Defendants construe Morris's state-law claims as claims of medical negligence and intentional infliction of emotional distress. (*See* Docket No. 36-1, at 6.) In its initial screening Order, the Court did not make clear what precise state-law causes of action Morris could proceed on. (*See* Docket No. 6.) For purposes of this Opinion, the Court will presume that Morris has stated a claim of medical negligence and, in the alternative, for intentional infliction of emotional distress. *See Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012) (holding that because it is a "gap-filler tort," "while intentional infliction of emotional distress could be pleaded alternatively, a litigant cannot prevail on both a [medical] negligence claim and an intentional infliction of emotional distress claim on the same set of facts.").

> (12) Plaintiff is **WARNED** that his . . . failure to comply with this or any subsequent order of the Court **MAY RESULT IN A DISMISSAL OF THIS CASE**.

(Docket No. 8, at 3-4 (all emphases in original).)

On May 9, 2013, the Christian County Defendants and Dr. Pacos each propounded written discovery requests on Morris. (*See* Docket No. 38-3.) In early June 2013, Dr. Pacos received the following response from Morris, which purported to answer Dr. Pacos's first set of interrogatories:

> Answers to these questions can be found in documents already on file with
>
> Christian County Sheriff [sic] report
> Jennie Stuart Hospital
> Doctors - Dr. Bealle and others
> X-rays done in Christian County Jail
> Pharmacies
> Christian County Jail
> State of Kentucky
> Eye Witnesses
> My daily diary completed while I was in jail.

(Docket No. 41-5, at 2.) This response was then forwarded to counsel for the Christian County Defendants. Morris to date has not responded to Dr. Pacos's requests for admission or requests for production of documents. By letter of June 13, 2011, counsel for the Christian County Defendants wrote to Morris requesting his cooperation in the discovery process and advising Morris that no response to their May 9 discovery requests had been received. (Docket No. 29-3.)

After no response had been received from Morris as of the June 27, 2013, discovery deadline, the Christian County Defendants filed their motion for request for

admissions to be deemed admitted, (Docket No. 29), and motion for sanctions, (Docket No. 30). In the former motion, they asserted that Morris had failed to respond to their discovery requests, and, in the latter motion, that Morris had failed to appear at his duly noticed deposition on June 18, 2013. Morris did not respond to either motion. By Order of July 26, 2013, the Court denied the Christian County Defendants' motion for request for admissions to be deemed admitted, noting the Court's inclination to permit Plaintiff, who is proceeding *pro se*, a final opportunity to respond to these Defendants' Interrogatories and Requests for Admission before sanctioning him or deeming admitted their requests for admission. (Docket No. 31, at 2.) In that regard, the Court issued the following instruction:

> Plaintiff is ORDERED to file responses to Defendants' Interrogatories and Requests for Admission <u>within 21 days of entry of this Order</u>. Plaintiff shall answer or object to each interrogatory in accordance with Federal Rule of Civil Procedure 33(b), and shall admit or deny each request for admission in accordance with Federal Rule of Civil Procedure 36. Plaintiff is warned that failure to timely respond will result in Defendants' Requests for Admissions being deemed admitted, and that failure to timely respond to Defendants' Interrogatories may result in dismissal of this action.

(Docket No. 31, at 3.) Also in that Order, the Court granted the Christian County Defendants' motion for sanctions, finding "no reason not to require [Morris] to pay the reasonable expenses incurred by his failure to appear for his scheduled deposition on June 18." (Docket No. 31, at 3.) The Court then ordered Morris to pay defense counsel the amount of $652.00 for costs and expenses incurred as a result of his failure to appear at his duly noticed deposition on June 18, 2013. (Docket No. 31, at 3.)

Then, on July 29, 2013, the Court received a letter from Morris. (Docket No. 32.) In that letter, Morris stated that he is "asking where I stand in this case" and "for an extention [sic] of time." (Docket No. 32, at 1.) Morris stated that an extension of time is needed because he "was incarcerated and had no access to finish forms" and because "counsel that was helping me has not recontacted me in any form."[2] (Docket No. 32, at 1.) By Order of August 8, 2013, the Court denied Morris's request for an extension of time, explaining:

> Pending Plaintiff's timely compliance with the Court's July 26 Order by filing responses to Defendants' discovery requests and paying defense counsel the $652.00 in costs and expenses owed, the Court then will reconsider the schedule and deadlines in this case. **Plaintiff is again warned**, as he has been twice before by the Court's Orders of March 1, (Docket No. 8), and July 26, (Docket No. 31), **that failure to comply with the Court's Orders may result in dismissal of this case**.

(Docket No. 33, at 3 (all emphases in original).) The Court further directed the Clerk of Court to send Morris copies of the docket sheet in this matter as well as an additional copy of the Court's July 26 Order. (Docket No. 33, at 3.)

On August 16, 2013, the Court received an undated letter from Morris. (Docket No. 35.) In that letter, Morris seems to argue that an extension of time is necessary because of the "lack of mail carrier in our district." (Docket No. 35, at 1.) Morris states that he has spoken with various personnel in the Clerk of Court's office and that he is

---

[2] The Court presumes that Plaintiff's reference to "counsel that was helping me," is in reference to attorney Eric Beardon, who represented Morris in his underlying criminal matters. Morris presently has no attorney of record in this matter, and no attorney has entered an appearance on behalf of Morris at any time in this case. In his Complaint, Morris named Beardon as a Defendant, alleging that Beardon abandoned him. However, in the Court's initial screening Order, Morris's claims against Beardon were dismissed in their entirety.

waiting to receive the "proper forms." (Docket No. 35, at 1.) However, it is unclear what forms Morris is referring to, or why he needs any "form" to properly respond to the Defendants' discovery requests. Morris's several references to "appeal" are also unclear.

DISCUSSION

The Christian County Defendants filed their instant Motion for Summary Judgment on August 23, 2013, (Docket No. 36), followed by Defendant JSMC's Motion on August 24, (Docket No. 39), and Dr. Pacos's Motion on August 26, (Docket No. 41). To date, Morris has not responded to any of these Motions. Other than that noted above, Morris also has not responded to any of the Defendants' discovery requests and, in essence, has failed to participate in discovery.

Morris also has failed to comply with the each and every one of the Court's Orders in this litigation, despite the Court's repeated warnings that his failure to comply could lead to the dismissal of his case. Morris has failed to comply with the Court's Scheduling Order of March 1 by, among other things, failing to timely file his pretrial memorandum no later than July 27. (*See* Docket No. 8.) Morris has failed to comply with the Court's Order of July 26 by failing to file responses to Defendants' interrogatories and requests for admission within 21 days thereafter. (*See* Docket No. 31.) Lastly, Morris has failed to comply with the Court's Order of August 8 both by failing to satisfy the costs and expenses awarded to defense counsel as well as by continuing to refuse to answer Defendants' discovery requests. (*See* Docket No. 33.)

Morris's failure to comply with the Court's Orders and seeming unwillingness to take part in his own case justify dismissal of this action. Federal Rule of Civil Procedure 37 is applicable where a party fails to cooperate in discovery and permits a court to sanction a party in one or more of several ways. Where a party fails to comply with a discovery order—as Morris has done here—among the sanctions permitted are "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 41(b) similarly provides the authority to dismiss an action where a "the plaintiff fails to prosecute or to comply with these rules or a court order." In dismissing a case under either Rule 37(b) or 41(b), the court must consider four factors: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (quoting *Knoll v. Am. Tel. & Telegraph Co.*, 176 F.3d 359, 363 (6th Cir. 1999)). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *Id.*

As for the first factor, Morris bears the burden of showing that his failure to comply was due to inability, not willfulness or bad faith. *See id.*; *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150 154 (6th Cir. 1988). Here, Morris has not proffered anything to overcome the presumption he has the ability to comply with the Court's Orders but simply has not. His repeated assertions that he is waiting on forms from the Clerk's office do not explain why he has failed to respond to the Defendants'

discovery requests, particularly in light of the Court's repeated instructions that he do so. Second, the Defendants in this action suffered prejudice when they could not comply with the Court's discovery deadline because Morris had failed to respond to their discovery requests and to appear at his duly noticed deposition. *See Reyes*, 307 F.3d at 458. In regard to the third factor, Morris has been warned in clear, unambiguous language on at least three occasions that his failure to comply could lead to dismissal. (*See* Docket No. 8, at 3-4 ("Plaintiff is **WARNED** that his . . . failure to comply with this or any subsequent order of the Court **MAY RESULT IN A DISMISSAL OF THIS CASE**."); Docket No. 31, at 3 ("Plaintiff is warned that failure to timely respond . . . may result in dismissal of this action."); Docket No. 33, at 3 ("**Plaintiff is again warned**, as he has been twice before . . . **that failure to comply with the Court's Orders may result in dismissal of this case**."). Finally, as to the fourth factor, the Court already has imposed the less severe sanction of requiring Morris to pay the costs and expenses incurred by his failure to appear for his deposition. The Court also has threatened Morris with the less severe penalty of having Defendants' requests for admission deemed admitted. But neither the threat nor imposition of less drastic sanctions has brought about Morris's compliance. Accordingly, the Court has no confidence that further sanctions short of dismissal would be of any use here.

CONCLUSION

For these reasons, IT IS HEREBY ORDERED that Defendants' respective Motions for Summary Judgment, (Docket Nos. 36; 39; 41), are DENIED as moot. A separate Order of dismissal will issue contemporaneously with this Opinion.

IT IS SO ORDERED.


Date:


cc: Counsel for Defendants
    Plaintiff Kenneth Martin Morris, *pro se*